IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

F. MICHAEL HART, as
Guardian ad Litem for J.M.,

        Plaintiff,

v.                                                                                          Civ. No. 08-896 JCH-RLP

THE NEW MEXICO SCHOOL FOR
THE DEAF, RONALD J. STERN, in
his individual capacity, TERRY WILDING,
in his individual capacity, and PATRICK
ERCOLINO, in his individual capacity

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' *Motion to Dismiss Based Upon Qualified Immunity*, filed February 25, 2009 [Doc. 30]. The Court having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that Defendants' motion should be GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff F. Michael Hart serves as Guardian ad Litem for J.M.[1], a young woman who was fifteen years old at the time of the events giving rise to this litigation.[2] This case arises from Plaintiff's allegation that J.M. was raped by Jorge Chavez ("Chavez"), at the time, a nineteen year-old male and fellow student at the New Mexico School for the Deaf ("NMSD"). Because

---

[1] Both parties are reminded of the importance of using initials when discussing the victim in public documents such as motions and briefs, rather than using her full name.

[2] This suit was initially filed by J.M.'s parents, Sylvia and Alex Martinez, in their capacity as J.M.'s parents and next friends. In the interim, J.M. reached the age of 18 years, but was held to be incompetent to represent her own interests in this case. Thus, the Court appointed a Guardian ad Litem, F. Michael Hart, to represent J.M.'s interests in this litigation. *See* Doc. 43. As a result, when referring to "Plaintiff" in this opinion, the Court uses the singular pronoun "he."

the Court is evaluating Defendants' motion to dismiss for failure to state a claim, it must assume

that all well-pleaded facts in Plaintiff's complaint are true, and must draw all reasonable

inferences in Plaintiff's favor.  Plaintiff's allegations follow.

J.M. is profoundly deaf and is unable to speak.  Her level of sophistication, intellectual

abilities, and IQ are below normal for a hearing child of her same age, and she received special

education services.  At the time of the incidents giving rise to this suit, J.M. was fifteen years

old, and attended NMSD as a non-residential student.  Prior to sending her to NMSD, J.M.'s

parents questioned NMSD administrators about prior incidents they had heard about having

occurred on campus, including a rape.  The administrators assured J.M.'s parents that they had

improved security and that J.M. would be safe there.

Jorge Chavez was nineteen years old at the time of the incidents giving rise to this suit.

He was a residential student at NMSD at all material times.  One day in late August, 2006, J.M.

was in the NMSD library working on a report.  When she stood up from her desk, Chavez signed

to her that she was pretty and then accosted her, trying to kiss her and grabbing her crotch and

breasts.  J.M. immediately reported this assault to Defendants Patrick Ercolino ("Ercolino") and

Terry Wilding ("Wilding").  At that time, Ercolino was a counselor at NMSD and Wilding was

NMSD's Principal, so his duties included management and oversight of the school.

After school on the day she was assaulted by Chavez, J.M. reported the incident to her

mother.  Her mother met with Wilding the next morning to ensure that the administration was

taking the incident seriously and that steps would be taken to ensure that such an incident would

not happen again.  At that time, and on other occasions, J.M.'s mother expressed concerns to

NMSD administrators about J.M.'s safety and the potential for future assaults.  She was assured

that J.M. would be protected and that safeguards would be put in place to ensure her safety.

After investigating the assault in the library, the administration classified the incident as simply a misunderstanding between the two students, apparently accepting Chavez's explanation that he thought they were dating. Wilding gave both students a "warning," disregarding J.M.'s complaint that she was the victim of a sexual assault. The administration did not report the alleged assault to the police or counsel Chavez on the inappropriateness of sexually touching a much younger student (or any student) without her consent.

After the August assault in the library, Chavez continued to express a sexual interest in J.M. and to pursue her. On one occasion, he sent her a text message asking her to send him a photo of her breasts, which she did not do.

On October 17, 2006, J.M. scheduled a meeting with Ercolino at which she indicated that Chavez had continued to pursue and pressure her, making her uncomfortable, and that she wanted it to stop. At the end of their meeting, Ercolino told J.M. that he wanted to have a meeting the next morning to counsel Chavez about the impropriety of him having a "relationship" with J.M. "given their age difference." He asked J.M. to attend the meeting, and she agreed to do so.

On the morning of October 18, 2007, J.M. arrived somewhat late to school, past the time of the scheduled meeting. Because she did not arrive on time for the meeting, Ercolino told Chavez that the meeting would have to be rescheduled, and sent him back to his classroom. J.M. had been brought to school that morning by her mother, who escorted her to class. Unaware that the meeting had been cancelled, J.M. asked for and received a pass from her teacher to go to the building in which the meeting was to be held (the medical center) in order to meet with Ercolino.

At approximately 9:25 a.m., while walking to the medical center on the NMSD campus, J.M. was approached from behind by Chavez. He tickled her. She kept walking to the medical

3

center with Chavez following her.  They entered the building to meet with Ercolino, but he was

not there.

At that time, Chavez grabbed J.M. by the arm and led her down the hallway into the

unlocked, vacant Boys' Ward, which was part of the medical center.  Chavez started kissing J.M.

and taking his clothes off.  He then pulled her into a bathroom.  There, he forced her to take off

her shirt, despite her repeatedly signing "no" and more than once demanding that he stop.  She

physically struggled with him, but he did not stop assaulting her and did not let her leave the

bathroom.  Ultimately, he raped her vaginally and anally.

When Chavez eventually freed J.M., she went to Wilding to report the latest assault.  A

criminal investigation was launched, during which Chavez admitted that he had continued

touching J.M. despite her demands that he stop.  Chavez was arrested, and later pled guilty to

statutory rape and contributing to the delinquency of a minor.  Even after Chavez was charged

with criminal conduct, he continued to be popular and openly celebrated by many at NMSD,

including some faculty and staff.

This incident is only one in a history of incidents of sexual abuse and inappropriate

sexual activity occurring at NMSD.  Despite knowing that there were secluded areas in buildings

and elsewhere on campus that precluded observation of students, NMSD failed to have an

emergency alert system in place and allowed students to leave the classroom unescorted.

Plaintiff's complaint contains four counts: 1) Negligent Operation and Maintenance of

NMSD; 2) Violation of J.M.'s Substantive Due Process rights under the Fourteenth Amendment

brought pursuant to 42 U.S.C. § 1983 against individual Defendants Wilding and Ercolino; 3)

Violation of J.M.'s Equal Protection rights brought pursuant to 42 U.S.C. § 1983 against

individual Defendants Stern and Wilding; and 4) Sexual Harassment under Title IX of the

Education Amendments of 1972, 20 U.S.C. § 1681(a).  This motion concerns only the

Constitutional claims brought against the individual Defendants under § 1983.  Thus, the Court

will not discuss either the state law negligence claim nor the Title IX sexual harassment claim.

## LEGAL STANDARDS

    A.  Dismissal Under Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that

"failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any

pleading.  A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim

if a complaint does not "contain enough allegations of fact 'to state a claim to relief that is

plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (quoting *Bell Atlantic v.*

*Twombly*, 127 S.Ct. 1955, 1974 (2007)).  In considering a Rule 12(b)(6) motion, a court must

assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all

reasonable inferences in favor of a plaintiff.  *See Housing Auth. of the Kaw Tribe v. City of*

*Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991), *cert. denied*, 504 U.S. 912 (1992); *Maher v.*

*Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998).  The issue in reviewing the

sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a

plaintiff is entitled to develop and offer evidence to support his or her claim.  *See Scheuer v.*

*Rhodes,* 416 U.S. 232, 236 (1974).

These deferential rules, however, do not allow a court to assume that a plaintiff "can

prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in

ways that [the plaintiff has not] alleged."  *See Associated Gen. Contractors, Inc. v. California*

*State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The rules also do not require a court to

accept legal conclusions or unwarranted inferences.  *See United States v. Fisher*, 38 F.3d 1144,

1147 (10th Cir. 1994) (citation omitted).

The Court applies the same standards when evaluating a 12(b)(6) motion based on a

claim of qualified immunity, such as in this case, as it applies in evaluating any other 12(b)(6)

motion.  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The Court

recognizes that ensuring sufficient notice to the defendants of the grounds of the claim against

them is especially important in the context of a section 1983 suit against individual government

actors claiming qualified immunity because of "the special interest in resolving the affirmative

defense of qualified immunity 'at the earliest possible stage of a litigation.'" *Robbins v.

Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (citation omitted).

B.  Qualified Immunity

The concept of qualified immunity protects governmental officials performing

discretionary functions from liability for civil damages as long as their conduct does not violate

clearly established statutory or constitutional rights that a reasonable person in their position

would have known about.  *See Harlow v. Fitzgerald*, 457 U.S. 808, 818 (1982).   The doctrine

recognizes that officials can act without fear of harassing litigation only if they can reasonably

anticipate when their conduct may give rise to liability and only if unsupported lawsuits are

quickly terminated.  *See Butz v. Economou*, 438 U.S. 478, 507-508 (1978).  In other words,

qualified immunity ensures that officers do not have to endure the burdens of litigation unless

they are on notice that their conduct is unlawful.  *See Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Thus, in order to overcome a claim of qualified immunity, a plaintiff must (1) plead facts

which, if true, would constitute a violation of a constitutional right; and (2) demonstrate that the

defendants' conduct violated clearly established rights of which a reasonable person in the

defendants' position at the time would have known.  *See id*. at 201-02.  A right is considered

"clearly established" if there is a Supreme Court or Tenth Circuit decision on point, or if the

clearly established weight of authority from other courts shows that the right is as claimed by the

plaintiff.  *See Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002).  Previous cases need not

be identical or even "fundamentally similar" in order to put an official on notice, rather, the

"salient question...is whether the state of the law [at the time of the act] gave [defendants] fair

warning that their alleged treatment of [plaintiff] was unconstitutional."  *Hope v. Pelzer*, 536

U.S. 741 (2002).

## ANALYSIS

A.      Equal Protection Claim

Plaintiff's equal protection claim, brought pursuant to 42 U.S.C. § 1983, is stated against

Defendants Stern and Wilding.[3]  *See* Complaint [Doc. 1, Ex. E] at 12.  While "it is well

established in this circuit that sexual harassment by a state actor can constitute a violation of the

equal protection clause," *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989), the harassment

alleged in this case was not perpetrated by a state actor.  Instead, Plaintiff bases his equal

protection claim on the supervisory liability of the named state actors and their tolerance of

Chavez's acts of sexual assault and harassment of J.M.

Plaintiff bases his claim on the alleged similarity between this case and *Murrell v. Sch.*

*Dist. No. 1, Denver Colo.*, 186 F.3d 1238 (10th Cir. 1999).  In *Murrell*, the Tenth Circuit held

---

[3] Despite Plaintiff's Complaint naming only Defendants Stern and Wilding in its equal protection violation count, Plaintiff's brief in response to Defendants' motion for summary judgment addresses an alleged equal protection violation by Defendant Ercolino as well.  *See* Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Based on Qualified Immunity [Doc. 35] at 6-9.  Because Defendant Ercolino was not named in this count of the Complaint, the Court will not discuss whether the facts as pled by Plaintiff adequately state a claim against Ercolino.

that a mother stated a Section 1983 equal protection claim against individual school

administrators and teachers by alleging that they failed to remedy sexual harassment against her

daughter despite having actual knowledge of it.  The court further found that the principal and

teachers were not entitled to qualified immunity on that claim.  The *Murrell* court held that "a

governmental official or supervisory employee may be held liable under section 1983 upon a

showing of deliberate indifference to known sexual harassment."  *Id*. at 1250.  Although, as in

this case, the sexual harassment at issue in *Murrell* was committed by a student rather than a

state actor, the court "found the possibility of state action where 'a supervisor or employer

participates in or *consciously acquiesces* in sexual harassment by an outside third party or by co-

workers.'"  *Id*. (quoting *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1992))(emphasis in

original).

An equal protection claim under section 1983 "must be predicated upon a 'deliberate'

deprivation of constitutional rights by the defendant and not upon mere negligence."  *Id*.

(quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992)).  The *Murrell*

court held that a claim "that the principal and the teachers knew about [the third party's]

harassment of [the plaintiff] and acquiesced in that conduct by refusing to reasonably respond to

it" stated a claim upon which relief could be granted.  Thus, following the *Murrell* court's

guidelines, "[i]n order to state a claim of 'deliberate' discriminatory conduct, [Plaintiff] must

state facts sufficient to allege 'defendants actually knew of and acquiesced in' [Jorge Chavez's]

behavior."  *Id*. (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)).

Under *Murrell's* holding, Plaintiff must allege actual knowledge on the part of

Defendants of ongoing harassment of J.M. by Chavez.  A close reading of Plaintiff's Complaint

finds no attribution of actual knowledge of the ongoing harassment to Defendant Stern.  Rather,

Stern appears to be named for his alleged failure to properly train and supervise NMSD

employees and his alleged failure to put into place policies and practices to protect students from

sexual abuse.  Without any alleged actual knowledge, Stern cannot be said to have consciously

acquiesced in Chavez's ongoing harassment of J.M., and Plaintiff has therefore failed to state an

equal protection complaint against him.  Because the equal protection count is the sole count in

which Stern is named as an individual defendant, he must be dismissed from this suit.

On the other hand, the Complaint clearly alleges that Defendant Wilding, the principal,

had actual knowledge of the ongoing harassment.  After J.M. was sexually assaulted in the

library, she reported the incident directly to Wilding.  *See* Complaint [Doc. 1, Ex. E] at 4, ¶ 22.

J.M.'s mother went to see Wilding the next morning to ensure that he was taking the incident

seriously and that the school would take steps to prevent a similar assault from happening in the

future.  *Id*. at 5, ¶ 23.  The complaint further alleges that members of the NMSD administration,

presumably including Wilding, had knowledge of J.M.'s mother's concerns about the potential

for future assaults, especially given repeated acts of sexual abuse and misconduct by other

students in the past.  *Id*. at 4-8, ¶¶ 18, 24, and 44.

In arguing that the circumstances alleged in this case do not rise to the level of a

constitutional violation, Defendants attempt to distinguish this case from *Murrell.  See* Reply in

Support of Motion for Summary Judgment (hereinafter "Def't Rep.") [Doc. 38] at 5-6.  In

*Murrell*, the school staff actively attempted to cover up the ongoing harassment of a

developmentally and physically disabled student by one of her fellow students.  The staff told

the assaulted student not to report the assault to her parents, and declined to investigate the

incident.  *See Murrell*, 146 F.3d at 1243-44.  In this case, Defendants contend, the NMSD

administration took steps to address the harassment issue by investigating the initial assault and

by scheduling a meeting with J.M. and Chavez to address his continued harassment of her.

While clearly not amounting to an active cover-up as in the *Murrell* case, the Court cannot

definitively say at this stage of litigation that Plaintiff's allegations, properly developed and

supported, could not enable him to demonstrate Wilding's conscious acquiescence in ongoing

harassment by Chavez that rises to the level of an equal protection violation.

At issue in this claim is the reasonableness of the response to the known harassment.  *See*

*Murrell*, 186 F. 3d at 1250 ("This is precisely Ms. Murrell's claim–that the principal and the

teachers knew about Mr. Doe's harassment of Ms. Jones and acquiesced in that conduct by

refusing to reasonably respond to it.").  It may well be that the investigation conducted, the

response to the initial assault, and the plan to counsel both students was reasonable.  However,

such reasonableness is not incontrovertibly apparent on the facts as stated in Plaintiff's

complaint.  Rather than merely making conclusory allegations that Defendants were deliberately

indifferent to known harassment, which would unquestionably be insufficient to support a claim

for relief, Plaintiff has come forward with well-pled facts offered to demonstrate a refusal to

remedy known sexual harassment.

After J.M. was sexually assaulted in the library, Wilding did not report the incident to the

police or child welfare authorities as a potential crime or as an incident of child abuse or neglect.

Instead, he interpreted the incident as "a misunderstanding" and gave *both* students "a warning."

Complaint (Doc. 1, Ex. E) at 5, ¶ 25.  After the harassment continued to the point that J.M. again

felt the need to complain to the school about it, the administration set up a further meeting,

which it asked J.M. to attend, at which the school's counselor would "counsel [] Chavez about

the impropriety of him having a relationship with J.M. 'given their age difference.'" *Id.* at 6, ¶

30.   That meeting never took place, because of J.M.'s rape by Chavez.

At this stage, the Court cannot say that Plaintiff's complaint does not "contain enough allegations of fact 'to state a claim to relief that is plausible on its face'" with respect to his equal protection allegations against Wilding.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (quoting *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007)).  Depending on the underlying facts unearthed in discovery to give context to the facts pled in the allegation, Wilding's solution of giving a "warning" to a sexual assault victim, his decision to handle the matter internally, and his counselor's intention to have the complaining victim attend a meeting with her assailant at which the assailant would only be told that it was improper to have a "relationship" with J.M. given their age difference could conceivably constitute deliberate indifference and conscious acquiescence on his part.  Plaintiff has therefore sufficiently alleged a constitutional violation by Defendant Wilding.

The second part of the qualified immunity analysis is a determination of whether the violated constitutional right was clearly established at the time of the violation.  Based on the analysis in *Murrell*, the law has been clearly established in the 10th Circuit since at least 1999 that a school principal, teacher, or other administrator may be liable for an equal protection violation if they are deliberately indifferent to acts of sexual harassment perpetrated on one student by another student.  In fact, "it has been clearly established since at least 1992 that a person who exercises the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority."  *Murrell*, 186 F.3d at 1251 (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992).  *Woodward* provided the reasoning necessary to hold the principal and other school administrators liable in *Murrell*, and *Murrell*'s holding in a case with similar allegations to this one demonstrates that the constitutional right was well established at the time

11

of the alleged violation, in 2006.

      B.      <u>Substantive Due Process</u>

Plaintiff's other claim at issue in this motion is a violation of J.M.'s substantive due

process rights by Defendants Wilding and Ercolino.[4]  As an initial matter, it is well settled that a

state does not have a constitutional duty to protect its citizens from violence by private actors.

*See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195-97 (1989).

Instead, state actors are generally liable under the Due Process Clause only for their own acts.

*See id*.  However, two established exceptions to this general rule exist: (1) the "special

relationship" doctrine; and (2) the "danger creation" theory.  *Uhlrig v. Harder*, 64 F.3d 567, 572

(10th Cir. 1995).  Although Plaintiff initially alleged that Defendants owed J.M. a heightened

duty to protect her health and safety under the "special relationship" doctrine, he abandoned that

claim in his briefing, and now focuses solely on the "danger creation" theory.  *See* Pl. Resp.

[Doc. 35] at 10.

In general, the danger creation doctrine provides that state officials may be liable for

injuries caused by a private actor where those officials created the danger that led to the harm.

*See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1237 (10th Cir. 1999).  The

key to evaluating danger creation theory cases "lies in the state actors' culpable knowledge and

conduct in affirmatively placing an individual in a position of danger, effectively stripping a

---

    [4] As with Plaintiff's equal protection complaint, despite naming only two defendants in his substantive due process claim (Wilding and Ercolino), Plaintiff's brief in response to Defendants' motion for summary judgment addresses an alleged substantive due process violation by Defendant Stern as well.  *See* Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Based on Qualified Immunity [Doc. 35] at 11-14.  Because Defendant Stern was not named in this count of the Complaint, the Court will not discuss whether the facts as pled by Plaintiff adequately state a claim against Stern.

person of her ability to defend herself, or cutting off potential sources of private aid." *Armijo v.*

*Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998). Not only must the environment

in which the incident occurs be dangerous and known to be dangerous, but the state actors "must

have used their authority to create a danger that would not otherwise have existed for the third-

party's [acts] to occur." *Id*. A plaintiff must show affirmative conduct on the part of the

defendants that "creates, or substantially contributes to the creation of, a danger or renders

citizens more vulnerable to danger than they otherwise would have been." *Gonzales v. City of*

*Castle Rock*, 307 F.3d 1258, 1263 (10th Cir. 2002). When analyzing this issue, "it is important

to distinguish between affirmative conduct that creates or enhances a danger, and a failure to act

that merely does not decrease or eliminate a pre-existing danger." *Id*.

For a state actor to be liable under Section 1983 for creating a special danger, "a plaintiff

must allege a constitutionally cognizable danger." *Uhlrig*, 64 F.3d at 572. In other words, a

plaintiff's claim "must be 'predicated on reckless or intentionally injury-causing state action

which "shocks the conscience"' of federal judges." *Sutton*, 173 F.3d at 1238 (quoting *Uhlrig*, 64

F.3d at 572-73). In this case, Plaintiff does not allege that Defendants intentionally created a

dangerous situation for J.M. that ultimately led to her injury. Therefore, her claims must rest on

a showing of reckless conduct on the part of Defendants. *Id*. The Tenth Circuit has defined a

"reckless" act as one that "reflects a wanton or obdurate disregard or complete indifference to

risk" and has held that reckless intent is established if the state defendant "was aware of a known

or obvious risk that was so great that it was highly probable that serious harm would follow and

he or she proceeded in conscious and unreasonable disregard of the consequences." *Medina v.*

*City and County of Denver*, 960 F.2d 1493, 1496 (10th Cir. 1992). Thus, recklessness must

include an element of deliberateness, which necessarily precludes conduct that is merely

13

negligent from being considered reckless.  *See Sutton*, 173 F.3d at 1238 (citing *Uhlrig*, 64 F.3d

at 573).  As stated in *Sutton*, to hold Defendants liable for the injuries suffered by J.M. at the

hands of Chavez, Plaintiff must demonstrate "intentional or reckless, affirmative conduct on the

part of [Defendants] which created the danger, coupled with 'a degree of outrageousness and a

magnitude of potential or actual harm that is truly conscience shocking.'" 173 F.3d at 1238

(quoting *Uhlrig*, 64 F.3d at 574).

 The danger creation doctrine contains two variations, direct action and supervisory

liability, which Plaintiff uses to assert different claims against Ercolino and Wilding.  Plaintiff

alleges that Ercolino affirmatively increased an already known danger to J.M. by setting up the

scenario that pulled both J.M. and her harasser out of class at the same time.  He alleges that

Wilding failed to take any action to protect J.M. despite knowing of Chavez's sexually abusive

propensities, failed to appropriately supervise Ercolino, and failed to enforce NMSD's policies

and procedures regarding sexual misconduct.

 At this stage in the proceedings, discovery has not yet occurred.  The Court cannot say

that, based on Plaintiff's well-pleaded facts, his complaint does not "contain enough allegations

of fact 'to state a claim to relief that is plausible on its face'" with respect to his substantive due

process allegations.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (quoting *Bell Atlantic v.*

*Twombly*, 127 S.Ct. 1955, 1974 (2007)).  This is not the type of claim, discussed in *Robbins*, of

an amorphous, collective action against anonymous state actors.  Instead, the complaint "make[s]

clear exactly *who* is alleged to have done *what* to *whom*," thereby "provid[ing] each individual

with fair notice as to the basis of the claims against him." *Robbins*, 519 F.3d at 1250 (emphasis

in original).  Depending on the facts he brings out in discovery to provide context to the facts

alleged in his complaint, Plaintiff could plausibly demonstrate violations of J.M.'s clearly

established substantive due process rights by Defendants.  As such, dismissal of his substantive

due process claims under Rule 12(b)(6) is inappropriate at this time.

Plaintiff claims that Ercolino created an increased danger for J.M. by setting up a

meeting that would require her and the man who had previously assaulted her, and who she was

accusing of continuing harassment, to be out of their classrooms, unescorted, in an area of the

school that was secluded and unsupervised.  In addition, when he cancelled the meeting and left

his office, Ercolino did not inform J.M. or her teacher of the cancellation, adding to the

likelihood that J.M. would be alone with her tormentor in an unsupervised, secluded area.

Depending on the facts developed, the setting of such a meeting without attendant safeguards

could constitute an act of sufficient recklessness, with an obvious risk of serious harm so highly

probable, that it would constitute a violation of J.M.'s substantive due process rights of which a

reasonable person in Ercolino's position at the time would have known.

Similarly, depending on the facts developed, Plaintiff's claim that Wilding's failure to

adequately train and supervise Ercolino and his failure to follow established procedures relating

to sexual misconduct impermissibly created the dangerous environment that enabled J.M.'s rape

presents a viable case for liability.  If, in the face of multiple sexual assaults on campus, and a

previous assault on J.M. by Chavez, Wilding failed to implement policies to prevent further

sexual assaults or to ensure that the policies were being followed even with respect to popular

students such as Chavez, a viable case for liability could have been presented.

Even Defendants' assertion that the law regarding Plaintiff's claimed substantive due

process violations was not clearly established at the time of the actions giving rise to this suit

cannot be properly evaluated without further factual context.  Plaintiff claims that *Sutton v. Utah

Sch. for the Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999) provides the basis for claiming that

J.M.'s rights were clearly established at the time of the rape.  In *Sutton*, the plaintiff brought

claims under section 1983 based upon a molestation of one student by another.  The plaintiff in

*Sutton* complained to his mother that another boy had molested him in the bathroom at school,

and his mother notified the school superintendent, principal, and the plaintiff's teacher.  The

plaintiff's mother was reassured that children at the school were not allowed to visit the

bathroom alone, and that the plaintiff would be closely monitored while he used the bathroom.

A week later, a teacher's aide escorted the plaintiff to the bathroom, left her post to answer a

phone, and returned minutes later to discover the bathroom door closed and the plaintiff being

molested by another student.  The *Sutton* court found that the plaintiff stated a viable substantive

due process claim for failure to train or implement a policy to prevent such assaults, and implied

that it would have recognized a claim against the teacher's aide under the direct creation of the

danger doctrine, if she had been named as a defendant.  The plaintiff in *Sutton* suffered from

severe cerebral palsy, mental retardation, and blindness.  Defendants attempt to distinguish

*Sutton* from this case by claiming that the extent of that plaintiff's impairments was central to the

court's analysis, and that J.M. is insufficiently impaired to fall within the analysis set forth in

*Sutton,* so that the law was not clearly established at the time of the incident.  As with Plaintiff's

assertions, the Court cannot sufficiently evaluate Defendants' contention without further factual

development.

Simply put, further information on such topics as the degree of J.M.'s intellectual

impairments, the circumstances of the initial sexual assault and Defendants' knowledge of them,

the extent of Chavez's known sexual harassment of J.M. or others, NMSD's history with prior

incidents of sexual abuse and misconduct, and NMSD's procedures regarding sexual misconduct

is essential for the Court to be able to fairly evaluate Defendants' claims of qualified immunity.

In reaching this conclusion, the Court is mindful that the presumption in favor of finding qualified immunity is high, and that one of the primary purposes of the qualified immunity doctrine is "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982)).  Nonetheless, the specific facts of this case are crucial to the Court's ability to make a determination regarding whether Defendants' actions violated constitutional rights that were clearly established.  Because Plaintiff's factual allegations sufficiently identify the claimed violative conduct and the actors alleged to have engaged in that conduct such that the allegations plausibly state a claim and put defendants on sufficient notice of the basis of the claims against them, he is entitled to develop and present evidence to support his claims.  This is not to say that the Court is conclusively denying Defendants' claimed entitlement to qualified immunity in this case; only that the facts are insufficiently established at this stage to enable the Court to make a finding of qualified immunity.  The Court is in no way precluding a motion from Defendants revisiting this issue and seeking summary judgment on the basis of qualified immunity after the facts are further developed.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss Based Upon Qualified Immunity* [Doc. 30] is GRANTED in part and DENIED in part.

_____

**UNITED STATES DISTRICT JUDGE**

17